

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*26 Federal Plaza*
*New York, New York  10278*

June 21, 2024

**BY ECF**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      **Re:**    ***United States v. Mona Faiz Montrage*, 22 Cr. 617 (JPO)**

Dear Judge Oetken:

The defendant in the above-captioned case, Mona Montrage, is scheduled to be sentenced on June 28, 2024 at 3:00 p.m., after pleading guilty to conspiracy to receive stolen money, in violation of 18 U.S.C. § 371. For the reasons set forth below, the Government respectfully submits that the Court sentence the defendant to a term of imprisonment within the Guidelines sentencing range, which would be sufficient but not greater than necessary to serve the purposes of sentencing and would be fair and appropriate in this case.

## I.      Offense Conduct

From at least in or about 2013 through in or about 2019, the defendant was a member of a criminal enterprise (the "Enterprise") based in West Africa that committed a series of frauds against individuals and businesses in the United States, including romance scams. (PSR ¶¶ 15, 39, 44). Many of the Enterprise's romance scam victims were vulnerable, older men and women who lived alone. (PSR ¶ 15). The Enterprise frequently conducted the romance scams by sending the victims emails, text messages, and social media messages that deceived the victims into believing that they were in romantic relationships with a person who had, in fact, a fake identity assumed by members of the Enterprise. (*Id.*) Once members of the Enterprise had successfully convinced victims that they were in a romantic relationship and had gained their trust, they convinced the victims, under false pretenses, to transfer money to bank accounts the victims believed were controlled by their romantic interests, when, in fact, the bank accounts were controlled by members of the Enterprise. (*Id.*)

The defendant, who is a Ghanian social-media influencer, received money from approximately forty victims whom members of the Enterprise tricked into sending money.[1] (PSR ¶¶ 16, 17-36). For example, Victim-1, Victim-2, Victim-5 and Victim-6 each entered into what they believed was an online romantic relationship and were instructed to send money to the defendant.[2] Among the false pretenses used to induce the victims to send money to the defendant was payments to transport gold to the United States from overseas and payments to assist a fake United States army officer in receiving funds from Afghanistan. As to one victim, Victim-3, the defendant used her real name and spoke to the victim several times by phone.[3] (PSR ¶ 23.) The defendant sent the victim a tribal marriage certificate purporting to show that the defendant and the victim had been married in Ghana. (*Id.*) The victim sent the defendant approximately 82 wire transfers totaling approximately $89,000 to purportedly help with costs associated with the defendant's father's farm in Ghana. Another victim, Victim-4, was contacted by a purported FBI agent who requested payments to resolve a fake FBI unemployment investigation. (PSR ¶ 28).

The defendant received the fraudulent funds into five bank accounts at three different banks in the Bronx (the "Montrage Accounts"). (PSR ¶ 37.) Two of the Montrage Accounts were business bank accounts held in the name of "Mona Montrage DBA 4Reall Designs," a purported home-based sole proprietorship beauty supply store, although there appears to have been no transactions related to the beauty supply industry through those accounts. (*Id.*) Between December 31, 2013, and on October 15, 2019, the Montrage Accounts had deposits greater than approximately $500 that totaled approximately $2,165,000, and withdrawals greater than approximately $500 that totaled approximately $2,096,000. (PSR ¶ 39.) A majority of the deposits consisted of large wire transfers, check deposits, and cash deposits from various individuals, including the victims. Once the defendant received the fraud proceeds into her accounts, she laundered those fraud proceeds to other members of the Enterprise, including those located in Ghana. (PSR ¶ 16).

## II.    Guilty Plea and Applicable Guidelines Range

On November 10, 2022, a grand jury in the Southern District of New York returned an indictment charging the defendant with (1) conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 (Count One); (2) wire fraud, in violation of Title 18, United States Code, Section 1343 (Count Two); (3) conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Three); (4) money laundering, in violation of Title 18 United States Codes, Section 1956 (Count Four); (5) conspiracy to receive stolen money, in violation of Title 18, United States Code, Section 371 (Count Five); and (6) receipt of

---

[1] The defendant rose to fame as an influencer through her Instagram profile, under the username "Hajia4Reall," which at one point had approximately 3.4 million Instagram followers. (PSR ¶ 16).

[2] Victim-1 through -6 refer to the same individuals referenced in the Complaint, as well as the PSR.

[3] The defendant denies knowing Victim-3 but notably fails to explain how Victim-3 recognized her voice during an encounter between the defendant and Victim-3 in the Bronx, New York in or around July 2015. (PSR ¶¶ 24, 26).

stolen money, in violation of Title 18, United States Code, Section 2315 (Count Six).

On February 21, 2024, the defendant pleaded guilty pursuant to a plea agreement to Count Five of the Indictment. (PSR ¶ 10). The Guidelines range for Count Five is the 37 to 46 months' imprisonment. (PSR ¶¶ 11(C), 95).

## III.    Applicable Law

As the Court is aware, the Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), although they are no longer mandatory. "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" – that range "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). As the Second Circuit has noted, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must then consider the seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent the Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Cavera*, 550 F.3d at 189 (quoting *Gall,* 552 U.S. at 50).

## IV.    Discussion

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) supports the imposition of a Guidelines sentence of 37 to 46 months' imprisonment.

### A.    The Seriousness of the Defendant's Conduct

*First*, a sentence within the Guidelines range is necessary to reflect the seriousness of the defendant's conduct and to provide just punishment for the offense. Here, the defendant was a member of a criminal enterprise (the "Enterprise") based in Ghana that was involved in defrauding Americans through a series of fraud schemes – predominantly romance scams – the general details of which are discussed at length in the PSR. (*See* PSR ¶¶ 15-36.) Based on information known to the Government, the defendant was a member of the conspiracy for approximately six years, from at least 2013 through 2019. (PSR ¶ 39, 44.) The defendant opened and maintained at least five bank accounts at three different locations in the Bronx, New York that she used to launder fraud proceeds. (PSR ¶ 39, 44.) The defendant laundered proceeds from a variety of victims, who were disproportionately elderly individuals defrauded through online romance scams. (PSR ¶ 16-36.) Once the defendant received fraud proceeds from victims in bank accounts under her control, she withdrew and laundered those fraud proceeds to other members of the Enterprise in Ghana. (PSR ¶ 16.) In total, the defendant received more than two-million dollars in fraud proceeds from approximately forty victims in bank accounts that she controlled. (PSR ¶ 42.) Moreover, a couple of the defendant's accounts were opened in the name of a purported home-based sole proprietorship beauty supply store, although there appears to have been no transactions related to the beauty supply industry through those accounts. (PSR ¶ 37.) The use of business bank accounts allowed the defendant to receive large sums of money without being flagged for suspicious activity by the banks. Real victims were undoubtedly hurt by the crimes committed by the defendant. Further, the defendant's role in the conspiracy was integral to successfully committing the frauds by enabling funds received by domestic victims to be transferred to coconspirators in Ghana. For these reasons, the seriousness of the defendant's fraudulent conduct – which involved laundering more than two-million dollars over the course of six years – warrants a significant sentence.

### B.    The History and Characteristics of the Defendant and the Need to Avoid Unwarranted Sentence Disparities

*Second*, the history and characteristics of the defendant also warrant a substantial term of imprisonment. The defendant's conduct was not a one-time lapse in judgment but, rather, a continued series of choices to engage in criminal conduct and to evade the law. The defendant received fraud proceeds into multiple bank accounts over the span of several years. As such, and as discussed above, the defendant is linked to more than two-million dollars in fraud proceeds that were deposited into bank accounts under her control.

Further, a Guidelines sentence is necessary to avoid unwarranted sentence disparities. Other money launderers working on behalf of the Enterprise who were charged in separate cases in this District – including those who received significantly lesser funds than the defendant –

received substantial sentences. *See United States v. Rufai*, 18 Cr. 201 (DLC) (imposing thirty-month sentence for defendant accountable for a loss amount of approximately $477,000 (Prince Nana Aggrey); imposing forty-eight-month sentence for defendant accountable for loss amount of approximately $730,000 (Tourey Ahmed Rufai); imposing fifty-one-month sentence for defendant accountable for loss amount of approximately $760,000 (Muftau Adamu); imposing seventy-month sentence for defendant accountable for a loss amount of approximately $2.03 million, where the defendant was also involved in sophisticated money laundering and was a leader of the criminal activity (Deborah Mensah)); *United States v. Sadick Edussei Kissi*, 21 Cr. 64 (PAC) (imposing 36-month sentence for defendant accountable for approximately one-million dollars in fraud proceeds); *United States v. Faisal Ali*, 21 Cr. 613 (RMB) (imposing 46-month sentence for defendant accountable for approximately two-million dollars in fraud proceeds). A significant sentence is therefore warranted to reflect the defendant's extensive criminal conduct and to avoid unwarranted sentence disparities with other members of the Enterprise.

## C.      The Need for General Deterrence and Respect for the Law

*Third*, a Guidelines sentence of imprisonment is appropriate to ensure adequate general deterrence and to promote respect for the law. As the Court may be aware, this case, as well as the Government's broader investigation into the Enterprise, has attracted substantial media attention, including in Ghana.[4] A prison sentence within the Guidelines range is necessary to send a message to similarly situated individuals and the public that participating in romance scams or other fraud schemes in any capacity, and laundering proceeds from those frauds, will not be treated leniently and will entail a significant period of incarceration.

Such a message is particularly important at a time when such crimes, which are often difficult to prosecute, have become commonplace. Indeed, in 2018, the Better Business Bureau estimated that there were more than one-million victims of romance scams in the United States who collectively lost over $1 billion over the last three years.[5] Also in 2020, reported losses to romance scams reached a record $304 million, up about 50% from 2019, which is higher than for any other type of scam reported to the Federal Trade Commission.[6] It is therefore important that those who would consider engaging in these forms of criminal conduct understand that the consequences will be serious. Accordingly, a sentence within the Guidelines range is both necessary and appropriate to promote general deterrence and respect for the law.

---

[4] *See, e.g.*, *Hajia4Reall pleads guilty to receiving fraud proceeds from romance scams*, GhanaWeb (February 22, 2024), https://www.ghanaweb.com/GhanaHomePage/entertainment/Hajia4Reall-pleads-guilty-to-receiving-fraud-proceeds-from-romance-scams-1918088; *Instagram influencer scammed over $2 million from older, lonely Americans, federal prosecutors say*, CNN (May 16, 2023), https://www.cnn.com/2023/05/16/us/mona-montrage-alleged-romance-scammer-cec/index.html; *US jails Ghanaian 9 years for $36.4-million scam*, Modern Ghana (May 19, 2022), https://www.modernghana.com/news/1158992/us-jails-ghanaian-9-years-for-364-million-scam.html.

[5] *See* https://www.bbb.org/article/news-releases/17057.

[6] *See* https://www.ftc.gov/news-events/blogs/data-spotlight/2021/02/romance-scams-take-record-dollars-2020.

In seeking a below-Guidelines sentence, the defendant describes allegedly being raised with exposure to domestic abuse, as well as suffering her own domestic abuse as an adult. (PSR ¶¶ 68, 74.) While the Court can and should take these factors into consideration, they must be weighed against her involvement in laundering millions of dollars of proceeds from frauds targeting dozens of victims across the United States over a period of close to six years. A balancing of these factors warrants a much more significant sentence than the sentence of three-months' imprisonment requested by the defendant, which would fail to serve the purposes of sentencing.

## III.    CONCLUSION

For the reasons set forth above, the Government respectfully submits that a Guidelines sentence of 37 to 46 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing and would be fair and appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  _____
Kevin Mead
Mitzi S. Steiner
Assistant United States Attorneys
(212) 637-2211/-2284